USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 7/3/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
––––––––––––––––––––––––––––––––––––––––X
INNOVATIVE BIODEFENSE, INC.,

        Plaintiff,

 - against -

VSP TECHNOLOGIES, INC., SAN-MAR
LABORATORIES, INC., and CARLO MICCERI

        Defendants.
––––––––––––––––––––––––––––––––––––––––X

**OPINION AND ORDER**

12 Civ. 3710 (ER)

    This action stems from a series of contracts governing the sublicense of patented technology used to manufacture hand sanitizer. Defendant VSP Technologies, Inc. ("VSP") holds the master license to the intellectual property, and Plaintiff Innovative BioDefense, Inc. ("Plaintiff" or "IBD") currently holds an exclusive sublicense. The sublicense gives Plaintiff the right to use the intellectual property for the development and sale of antimicrobial products. Following what could be termed a tumultuous relationship, Plaintiff filed the instant action against Defendants VSP, San-Mar Laboratories, Inc. ("San-Mar"), and Carlo Micceri ("Micceri") (collectively, "Defendants") alleging breach of contract, fraudulent misrepresentation, and numerous other claims on the grounds that, contrary to their agreements, Defendants have not provided Plaintiff with the "know-how" necessary to fully utilize the patented technology. Defendants have counterclaimed, similarly alleging breach of contract and numerous other claims, on the grounds that Plaintiff has actually used the intellectual property without making the royalty payments required under the sublicense agreements.

    The litigation is now in the discovery phase, and the parties are currently negotiating the terms of a protective order that will govern the production and use of documents containing trade

secrets and other confidential information. Presently before the Court is Plaintiff's motion for an order declaring that California law should govern the parties' discovery of trade secrets, notwithstanding the fact that the contracts at issue contain a choice-of-law provision providing that they be construed in accordance with New York law. Plaintiff asserts that because the choice-of-law provision applies only to disputes arising under the contract, Defendants' non-contractual claims, i.e., those alleging tortious trade secret violations, are not subject to New York law. Defendants VSP and Micceri, on the other hand, argue that the choice-of-law provision should be construed according to its terms to apply to all matters, whether or not sounding in contract. The Court disagrees with Defendants' expansive reading of the choice-of-law provision. However, for the reasons discussed below, the Court finds that New York law should govern Defendants' counterclaims and, accordingly, Plaintiff's motion is DENIED.

### I. Background

#### a. Factual Background

Plaintiff is a California corporation with its principal place of business in Orange County, California. Compl. ¶ 3. Defendants VSP and San-Mar are New York corporations with their principal places of business in Elmsford, NY. *Id.* ¶¶ 4-5. Defendant Micceri, President of VSP and Executive Director of San-Mar, is domiciled in New York. *Id.* ¶¶ 6-7.

VSP holds the master license to patented technology for the use and manufacture of cleansing and skincare products (the "Products"), including antimicrobial hand sanitizer. *Id.* ¶ 12. In 2009, VSP entered into three Sublicense Patent Agreements (the "Agreements") with non-parties BDS Solutions, LLC, BDS Technologies, LLC, and BioDefense International, Inc. (collectively, the "BioDefense Entities"). *Id.* ¶ 11. These Agreements convey to the BioDefense Entities the exclusive right to this patented technology. *Id.* ¶ 12.

2

As relevant to the instant motion, the Agreements also require that VSP make available to the BioDefense Entities all "Know-How[] which is [] useful or necessary" to utilize the patented technologies for the development and sale of the Products. *Id.* Ex. A ¶ 2.4. In return for the use of VSP's intellectual property and "know-how," the BioDefense Entities agreed to pay royalties to VSP. *Id.* Ex. A ¶ 3.1. Additionally, the BioDefense Entities agreed to make efforts to retain San-Mar as their third-party manufacturer; however, the Agreements provide that if the BioDefense Entities do not receive "acceptable" terms and/or efforts from San-Mar, they may, consistent with a procedure outlined in the Agreements, secure the services of another manufacturer. *Id.* Ex. A ¶ 2.5.

The Agreements also contain a choice-of-law provision, which states:

> This Agreement shall be deemed to be executed and to be performed in the State of New York, and shall be construed in accordance with the laws of the State of New York as to all matters, including but not limited to matters of validity, construction, effect and performance.

*Id.* Ex. A ¶ 14.1.[1]

In June 2011, Plaintiff acquired all "right, title, and interest" in the Agreements from the BioDefense Entities. Compl. ¶ 25. VSP was thereafter required to make available to Plaintiff all know-how which was useful or necessary for Plaintiff to utilize the patented technology for the manufacture and sale of the Products. *Id.* ¶ 27.

Almost immediately following Plaintiff's acquisition of the sublicense, the relationship

---

[1] The Court notes that in its moving papers, Plaintiff misquoted this provision in a manner that was both substantive and directly relevant to the issue raised in its motion, by excising a portion of the language without alerting the Court to the deletion through the use of ellipses or by any other means. *Compare* Pl.'s Mem. L. 1-2 ("[T]his agreement shall be . . . construed in accordance with the laws of the State of New York as to all matters of validity, construction, effect and performance."), *with* Compl., Ex. A ¶14.1 ("This Agreement shall be . . .construed in accordance with the laws of the State of New York as to all matters, *including but not limited to* matters of validity, construction, effect and performance.") (emphasis added). This opinion assumes that the inaccurate quotation was inadvertent. Counsel is reminded, however, that they have a duty not to "[k]nowingly make [] false statement[s] of law or fact" to the Court. ABA Model Rule of Prof'l Conduct 3.3(a)(1).

between Plaintiff and Defendants began to deteriorate. According to Plaintiff, Defendants have been interfering with its business prospects and rights under the Agreements since approximately July 2011.[2] *Id.* ¶¶ 28-37. Plaintiff commenced this action as a result.

### b. Procedural History

Plaintiff filed the instant action on May 9, 2012, alleging breach of contract, tortious interference with prospective economic advantage, tortious interference with contract, fraudulent misrepresentation, negligent misrepresentation, fraud in the inducement, and breach of the implied covenant of good faith and fair dealing. Doc. 1. On December 20, 2012, Defendants filed their Amended Answer with Counterclaims, alleging, *inter alia*, breach of contract, unjust enrichment, and conspiracy to defraud. Doc. 36. These counterclaims gave rise to Plaintiff's present motion. Specifically, Plaintiff argues that California law should apply to Defendants' "trade secret counterclaims," notwithstanding the New York choice-of-law provisions in the Agreements.[3]

### c. Substantive Differences Between New York and California Law Governing Trade Secret Misappropriation Claims

In support of its motion, Plaintiff has pointed to several substantive differences between

---

[2] Plaintiff also claims that Defendants have engaged in improper behavior dating back to 2009, when the BioDefense Entities entered into the sublicense. Compl. ¶¶ 39, 76-78.

[3] Although in its moving brief, Plaintiff contends that "trade secret claims are woven through *the entire counterclaim*," Pl.'s Mem. L. 1 (emphasis added), in its reply brief, Plaintiff concedes that "the contract-based counterclaims should be governed by New York law pursuant to the choice-of-law provisions" and that its motion is limited to the "*trade secret* counterclaims." Pl.'s Reply Mem. L. 7 (emphasis in original). Nowhere in Plaintiff's papers, however, does it specifically identify for the Court which of Defendants' ten counterclaims it believes California law should apply to; rather, Plaintiff has merely cited to particular *paragraphs* within Defendants' causes of action (i.e., Paragraphs 92, 99, 103, 143 and 144) that it apparently believes assert trade secret claims. Accordingly, the Court assumes that the "trade secret counterclaims" Plaintiff refers to are the corresponding causes of action for the cited paragraphs (that is, breach of contract, unjust enrichment, and conspiracy to defraud). Moreover, although Plaintiff concedes that "the contract-based counterclaims should be governed by New York law," it nevertheless contends that Defendants' breach of contract counterclaim is, in essence, a "trade secret claim." Plaintiff points to paragraph 99 within the breach of contract claim in support of its argument, which states that: "IBD has continued to make use of VSP's protected patent rights, 'Zytrel' trademark and 'know how' since June 1, 2011 and has failed to make payment of royalties in breach of said agreement."

the relevant laws of California and New York. Most obviously, California has enacted a version of the Uniform Trade Secrets Act ("UTSA"), while New York has not.[4] The California UTSA creates a statutory cause of action for misappropriation of a trade secret and operates to preempt alternative civil remedies based on allegations of trade secret misappropriation. *See K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 258 (Cal. Ct. App. 2009). Accordingly, courts applying California's UTSA have held that claims for conversion, unfair competition, unjust enrichment and negligence are preempted where they are "based entirely on the same factual allegations that form the basis of [plaintiff's] trade secrets claim." *Id.* (citing *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 318 F. Supp. 2d 216, 220-21 (D. Del. 2004) (applying California law); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (holding "that California's statute . . . preempts Digital's claims for unfair competition and unjust enrichment since those claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief")).

When adopting the UTSA, the California Legislature also enacted a separate statutory provision, Cal. Civ. Proc. § 2019.210, which requires, in relevant part, that "[i]n any action alleging the misappropriation of a trade secret . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." Cal. Civ. Proc. § 2019.210; *see also Brescia v. Angelin*, 90 Cal. Rptr. 3d 842, 848 (Cal. Ct. App. 2009). California courts applying § 2019.210 have since noted that the statute serves four interrelated goals:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs

---

[4] New York is one of only three states not to have adopted the UTSA; the other two are Massachusetts and North Carolina. *See* Unif. Law Comm'n, *Legislative Fact Sheet-Trade Secrets Act*, www.uniformlaws.org/LegislativeFactSheet.aspx?title=Trade%20Secrets%20Act (last visited July 1, 2013).

> from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Brescia*, 90 Cal. Rptr. 3d at 848 (quoting *Advanced Modular Sputtering, Inc. v. Superior Court*, 33 Cal. Rptr. 3d 901, 906 (Cal. Ct. App. 2005)). Moreover, § 2019.210 is not "cause of action" specific; rather, it refers to any "action" (i.e., the entire lawsuit) alleging misappropriation of a trade secret. *Advanced Modular Sputtering, Inc.*, 33 Cal. Rptr. 3d at 907.

New York has no comparable statutory provisions to the California UTSA. Moreover, with respect to discovery regarding trade secrets, the Federal Rules of Civil Procedure, which generally govern the scope and timing of discovery in diversity actions, do not provide a privilege for trade secrets and similar confidential information. *See Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006). However, Rule 26(c)(1)(G) provides that a district court, for "good cause," may issue an order "that a trade secret . . . not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). To demonstrate "good cause," the party seeking the protective order must show that the information sought is a trade secret and that the harm caused by its disclosure outweighs the need of the party seeking the disclosure. *Chembio Diagnostic Sys., Inc.*, 236 F.R.D. at 136.

**II. Discussion**

    **a. New York General Obligation Law § 5-1401**

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 418-19, 419 n.61 (S.D.N.Y. 2007) (citing *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d

Cir. 2006)). Under traditional New York choice-of-law rules, absent fraud or a violation of public policy, courts will uphold a choice-of-law clause so long as the state selected has sufficient contacts with the transaction. *Int'l Minerals & Res., S.A. v. Pappas, et al.*, 96 F.3d 586, 592 (2d Cir. 1996) (quoting *Klitzman v. Bache Halsey Stuart Shields, Inc.*, No. 79 Civ. 6249 (JFK), 1985 WL 1984, at *2 (S.D.N.Y. June 27, 1985)).

In 1984, New York modified its common law approach to choice-of-law clauses through the enactment of General Obligation Law § 5-1401, which states in relevant part: "The parties to any contract . . . relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars . . . may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract . . . bears a reasonable relation to this state." *See* N.Y. Gen. Oblig. § 5-1401; *see also Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 136 (S.D.N.Y. 2000). Thus, for such transactions, the parties' choice of law provision is enforceable, unless procured by fraud or overreaching, even if, under a traditional choice-of-law analysis, the application of New York law would violate a fundamental public policy of another, more interested jurisdiction. *See Tosapratt, LLC v. Sunset Props., Inc.*, 926 N.Y.S.2d 760, 86 A.D.3d 768, 770-71 (3d Dep't 2011). Plaintiff does not contend that the choice-of-law provision at issue here was procured by fraud or overreaching,[5] and the parties do not appear to dispute that the value of the contract exceeds $250,000.[6]

---

[5] Plaintiff alleges fraud in the inducement of the Sublicense Patent Agreements as a whole as a result of Micceri's alleged material misrepresentations prior to the execution of the Agreements. Compl. ¶¶ 76-77. However, Plaintiff's fraud allegation does not relate to the choice of law provision.

[6] Plaintiff seeks judgment in the sum of $8,000,000 for its breach of contract claim. Compl. at 22.

### b. The Parties' Choice-of-Law Provision

Although both parties accept the general applicability of § 5-1401, Plaintiff opposes the specific application of New York law to a number of Defendants' counterclaims, which Plaintiff contends are, in essence, non-contractual, "trade secret claims." Pl.'s Mem. L. 1.

New York courts are reluctant to construe choice-of-law provisions broadly to encompass non-contractual claims. *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 334-35 (2d Cir. 2005). Accordingly, under New York law, for a choice-of-law provision to apply to torts arising incident to the contract, the express language of the provision must be "sufficiently broad" so as to encompass the entire relationship between the contracting parties. *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (citing *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994)). New York courts have consistently held that language that the "agreement itself" is to be governed by a particular law is too narrow to cover non-contractual claims, *see, e.g., Williams v. Deutsche Bank Sec., Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, at *5 (S.D.N.Y. June 13, 2005), and that in order to achieve broad coverage, parties should utilize choice-of-law provisions that "employ expansive language such as 'arising out of or relating to' the contract or 'arising directly or indirectly from the Agreement.'" *Frazer Exton Dev., LP v. Kemper Envtl., Ltd.*, No. 03 Civ. 0637 (HB), 2004 WL 1752580, at *10 (S.D.N.Y. July 29, 2004) (holding that the "with respect to" language utilized in the agreement "falls short of the mark" to achieve broad coverage) (citations omitted), *aff'd*, 153 F. App'x 31 (2d Cir. 2005).

The choice-of-law provision at issue here states that "*[t]his Agreement* shall be . . . construed in accordance with the laws of . . . New York as to all matters." Compl., Ex. A ¶ 14.1 (emphasis added). The Court holds that this language is not sufficiently expansive to achieve the

broad coverage Defendants assert. This holding is supported by the fact that, as compared to the language employed by the parties in the choice-of-law provision, they chose to use broad language in the forum-selection clause, which provides that:

> In the event of *any controversy, claim or dispute* between the Parties hereto *arising out of or relating to* this Agreement, such controversy, claim or dispute may be tried exclusively in the courts of the State of New York, County of New York or in the United States Federal District Court, Southern District, as either Party may elect.

*Id.* (emphasis added). "Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional." *See Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC*, 818 N.Y.S.2d 513, 516 (2d Dep't 2006); *see also Williams*, 2005 WL 1414435, at *5 ("The choice of law provision is considerably narrower than, and at any rate clearly different from, the forum selection clause. It is therefore reasonable to assume that the parties, in utilizing different standards for the choice of law and choice of forum, had different intentions with respect to the reach of the two provisions."). The Court therefore assumes that the inclusion of broad language in the forum-selection provision and omission of similarly broad language in the choice-of-law provision was intentional. Accordingly, the Court finds that the choice-of-law provision should be read to apply only to disputes arising from the Agreements.

The Court's inquiry does not end there, however, as Plaintiff cites to several paragraphs within Defendants' breach of contract, unjust enrichment, and conspiracy to defraud counterclaims and argues that these counterclaims allege, "albeit somewhat obtusely, trade secret misappropriation as a basis for liability." Pl.'s Mem. L. 1. Accordingly, the Court must first determine whether the cited counterclaims are contractual—and thus governed by New York

9

law—or non-contractual in nature. For those counterclaims that the Court determines are non-contractual, the Court must apply New York choice-of-law principles to determine the appropriate law to apply to those claims. The Court addresses each of the challenged counterclaims in turn.

### i. Unjust Enrichment Counterclaim

Plaintiff argues that Defendants' unjust enrichment counterclaim raises extra-contractual allegations and thus, should not be governed by the choice-of-law provision.[7] The Court agrees. Claims for unjust enrichment or *quantum meruit* "are non-contractual, equitable remedies" and are therefore outside the scope of the parties' choice-of-law provision. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997) (applying New York law); *see also Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 444 (S.D.N.Y. 2010) (holding that choice-of-law provision does not apply to unjust enrichment claim because "extra-contractual claims are outside the scope of contractual choice-of-law provisions") (quotation marks and citation omitted).

In determining the law applicable to an unjust enrichment claim, New York courts determine which jurisdiction has the most significant contacts to the dispute.[8] *See Hettinger*, 733

---

[7] Although Plaintiff asserts that several of Defendants' counterclaims, including the unjust enrichment claim, are really claims for trade secret misappropriation, Plaintiff provides the Court with no authority to support its contention. Accordingly, the Court will evaluate Defendants' counterclaims as alleged.

[8] Several courts in this Circuit have applied a torts "interest analysis" to unjust enrichment claims. *See, e.g., Grund v. Del. Charter Guar. & Trust Co.*, 788 F. Supp. 2d 226, 251 n.9 (S.D.N.Y. 2011); *In re Hydrogen, L.L.C.*, 431 B.R. 337, 359 (Bankr. S.D.N.Y. 2010); *Hughes v. LaSalle Bank, N.A.*, 419 F. Supp. 2d 605, 617 (S.D.N.Y. 2006), *vacated on other grounds*, 2007 WL 4103680 (2d Cir. Nov. 19, 2007). The Court finds, however, that the interest analysis also favors the application of New York law. Under an interest analysis, the Court must determine which jurisdiction has the greatest interest in the litigation in light of its relationship or contact with the occurrence or the parties. *Hughes*, 419 F. Supp. 2d at 617. Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort. *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (N.Y. 1985). Where, as here, "the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." *Krock*, 97 F.3d at 646 (citations omitted). However, if the defendant's conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, "the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred." *Schultz*, 65 N.Y.2d at 195. Thus, the place of occurrence of the tort is "determined by where the plaintiffs' injuries

F. Supp. 2d at 444; *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008); *Zoll v. Ruder Finn, Inc., et al.*, Nos. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004). The significant-contacts test focuses on the following five factors: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile or place of business of the contracting parties. *See In re Grand Theft Auto*, 251 F.R.D. at 149. Furthermore, "the places of contracting and performance" weigh heavily in the choice of law determination. *Hettinger*, 733 F. Supp. 2d at 444 (citation omitted). Here, New York clearly has the most significant contacts with the dispute and its law should therefore be applied. The Agreements at issue were negotiated and executed in New York by New York companies, Compl., Ex. A at 1, and the subject matter of the Agreements (i.e., the trade secrets, know-how and patented technology) originated in New York. Compl. ¶ 12. Moreover, the Agreements contemplated that they would be performed in New York, as they required the BioDefense Entities and, later, Plaintiff, to make efforts to retain San-Mar—a New York corporation—as their third-party manufacturer. Compl.,

---

occurred." *Id.* Here, although the acts alleged to have given rise to Defendants' claim occurred in California, Defendants suffered their injury in New York, where they are located. *See Grund*, 788 F. Supp. 2d at 251 n.9 (holding that the law of plaintiffs' domicile applied to the unjust enrichment claim where it was the place of contracting, where performance was to occur and where plaintiff suffered losses). Accordingly, the Court finds that even under an interest analysis, New York law would apply to Defendants' claim.

At least one court in this District has applied the Restatement (Second) of Conflict of Laws to determine the applicable state law for an unjust enrichment claim. *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 618-19 (S.D.N.Y. 2005). The Court finds that the Restatement would also require the application of New York law to Defendants' unjust enrichment counterclaim. According to the Restatement, the law governing a claim for restitution to recover for unjust enrichment is that of the state which "has the most significant relationship to the occurrence and the parties." *Id.* at 618. Factors to consider under this approach, as relevant here, include: (1) "the place where a relationship between the parties was centered"; (2) the place where the benefit was received; (3) the place where the acts conferring the benefit were done; and (4) the domicile, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 221. The Restatement also notes that "[t]he place where a relationship between the parties was centered . . . is the contact that, as to most issues, is given the greatest weight in determining the state of the applicable law." *Id.* cmt. on Subsection (2). Here, the first and second factors favor the application of New York law. With respect to the fourth factor, Plaintiff is domiciled in California while Defendants are located in New York, however, the contracting parties to the Agreements at issue—the Biodefense Entities and Defendants—are located in New York. Thus, although the acts conferring the benefit were allegedly done in California, the weight of the factors point to the application of New York law.

11

Ex. A ¶ 2.5. Although the activities giving rise to Defendants' unjust enrichment counterclaim allegedly occurred in California, the weight of the factors favors the application of New York law.

### ii. Conspiracy to Defraud Counterclaim

Because claims of fraud are non-contractual in nature, the choice-of-law provision does not apply to Defendants' fraud claim, and the Court must therefore perform a choice-of-law analysis to determine the applicable law. *Krock*, 97 F.3d at 645 ("Under New York law, a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract.") (emphasis in original) (citation omitted). New York courts employ an "interest analysis" to determine what law should govern tort claims. *Cromer Fin. Ltd. v. Berger,* 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001). With respect to fraud claims, courts in this Circuit have held that the "paramount" concern is the locus of the fraud; i.e., "'the place where the injury was inflicted,' as opposed to the place where the fraudulent act originated." *Id.* (quoting *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989) ("Since a tort action traditionally has not been viewed as complete until the plaintiff suffers injury or loss, the cause of action has been considered to arise at the place where this damage was sustained.") (citation omitted)). The place in which the injury is deemed to have occurred "'is usually where the plaintiff is located.'" *Id.* (quoting *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings. Ltd.*, 85 F. Supp. 2d 282, 292 (S.D.N.Y. 2000)). Here, the alleged injury was to Defendants, who are located in New York. As such, New York law governs their conspiracy to defraud counterclaim. *See Rosenberg*, 718 F. Supp. at 1150 (holding that "it is immaterial that the alleged misrepresentations occurred in New Jersey" for choice-of-law purposes, and that the locus of the

fraud is Massachusetts because the "alleged injury suffered by plaintiffs occurred at their Kenmore Square Shop, in Massachusetts").

### iii. Breach of Contract Counterclaim

Plaintiff argues that Defendants' breach of contract counterclaim also relies on allegations of trade secret misappropriation and, accordingly, should not be governed by the parties' choice-of-law provision. Specifically, Plaintiff cites to Paragraph 99 within Defendants' breach of contract claim, which states:

> IBD has continued to make use of VSP's protected patent rights, "Zytrel" trademark and "'know how'" since June 1, 2011 and has failed to make payment of royalties *in breach of said agreement.*

Defs.' Am. Answer with Counterclaims (Doc. 36) ¶ 99 (emphasis added). The Court finds that the allegations giving rise to Defendants' breach of contract claim explicitly arise from the Agreements at issue and, accordingly, the contractual choice-of-law clause governs the counterclaim. Indeed, Paragraph 99 specifically states that Plaintiff used the "know how" and failed to make royalty payments *in breach of said agreement.*

That Defendants allege that Plaintiff used VSP's patent rights and "know how" does not automatically suggest that the claim should be treated, not as a breach of contract claim, but, rather, as a trade secret misappropriation claim. To establish a claim for misappropriation of trade secrets under New York law, a plaintiff must show: (1) that it possessed a trade secret, and (2) that defendant used that trade secret in breach of an agreement, confidential relationship, or duty. *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999)). Here, Defendants do not allege that Plaintiff's *use* of the "know how" is improper; indeed, they concede that the Agreements give Plaintiff the right to use the trade secrets. Rather, Defendants allege that

13

Plaintiff failed to make royalty payments to Defendants, as required by the Agreements. Accordingly, Defendants' breach of contract claim is derived from the Agreements and the New York choice-of-law provision applies to that claim.

### c. The Policy Concerns Underlying the California Statute are Vindicated on the Particular Facts of this Case

The Court's holding that New York law should apply to Defendants' counterclaims is bolstered by the fact that the application of New York law on the particular facts of this case does not contravene the goals of the California UTSA. First, the only requirement of § 2019.210 is that the party alleging trade secret misappropriation (here, Defendants) "identify the trade secret with reasonable particularity." As Defendants *gave* the trade secrets at issue to Plaintiff under the Agreements, the sole requirement of § 2019.210 has already been satisfied; i.e., the trade secrets at issue have been identified. Moreover, the policy concerns underlying the California statute are served here. Because the trade secrets at issue are the subject matter of the Agreements, and thus known to the parties and the Court, the Court will be able to frame the appropriate scope of discovery and prevent Defendants from using discovery as a means of obtaining other, non-related trade secrets. Moreover, Plaintiff is on notice of the trade secrets at issue and, therefore, does not have to wait until the eve of trial to form complete and well-reasoned defenses.[9] Accordingly, the Court finds that both the requirements and goals of the

---

[9] Finally, the Court notes that federal district courts in California are split over whether § 2019.210 is substantive, and thus, applies in federal court, *see Social Apps, LLC v. Zynga, Inc.*, No. 11 Civ. 04910 (YGR), 2012 WL 2203063, at *1 (N.D. Cal. June 14, 2012) (collecting cases), and the Ninth Circuit has not yet resolved the issue. *Id.* It is well-settled that matters of procedure are governed by the law of the forum, and that only "matters of substantive law fall within the course chartered by choice of law analysis." *Tanges v. Heidelberg N. Am.*, 93 N.Y.2d 48, 53 (N.Y. 1999). Moreover, "the law of the forum normally determines for itself whether a given question is one of substance or procedure," *id.* at 54 (quotation marks and citations omitted), and New York courts have held that "matters dealing with the conduct of litigation are procedural for conflict of law purposes." *Curbow Family LLC v. Morgan Stanley Inv. Advisors*, 950 N.Y.S.2d 845, 849 (Sup. Ct. 2012) (quoting NY Jur. 2d Conflict of Laws § 67). Accordingly, it is not clear that the Court is even required to conduct a choice-of-law analysis at all. Indeed, the statute at issue governs discovery rules and procedures, and may not be such an integral part of the UTSA so as to

California statute are met here, and the public policy of California is therefore not contravened by the application of New York law.

### III. Conclusion

For the reasons set forth above, the Court finds that New York law applies to Defendants' breach of contract, unjust enrichment, and conspiracy to defraud counterclaims. Therefore, Plaintiff's motion to apply California law to the proposed protective order is DENIED. The Clerk of the Court is respectfully directed to terminate the motion (Doc. 49).

It is SO ORDERED.

Dated: July 3, 2013
      New York, New York

Edgardo Ramos, U.S.D.J.

---

render it substantive. The Court need not address the issue, however, in light of the fact that, as discussed *supra*, New York's choice-of-law rules dictate that New York law shall apply to Defendants' claims.