UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INNOVATIVE BIODEFENSE, INC.,

                              Petitioner,

            – against –

VSP TECHNOLOGIES, INC., SAN-MAR
LABORATORIES, INC., and CARLO MICCERI,

                              Respondents.

**OPINION & ORDER**
12 Civ. 3710 (ER)

Ramos, D.J.:

        This case concerns a fee dispute between Innovative Biodefense, Inc. ("IBD")—the

plaintiffs in the underlying litigation—and Hill, Farrer & Burrill LLP ("Hill Farrer")—the law

firm that represented IBD in that litigation through the summary judgment stage.  After Hill

Farrer withdrew from the litigation in September 2015, IBD and Hill Farrer resolved their fee

dispute through arbitration, producing an award in Hill Farrer's favor that was subsequently

confirmed by the Superior Court of the State of California, County of Los Angeles.  Hill Farrer

now moves as a third-party (1) to enforce a charging lien, pursuant to New York Judiciary Law §

475, for the fixed amount of $356,635.94 against the settlement ultimately obtained by IBD in

the underlying litigation; and (2) for a judgment in *quantum meruit* against IBD for the same

amount plus post-judgment interest or, in the alternative, for a judgment enforcing the judgment

of the California court.  Because the Court finds both that Hill Farrer is not entitled to a charging

lien, and also that the exercise of supplemental jurisdiction over their *quantum meruit* claim is

inappropriate here, Hill Farrer's principal motions are DENIED.  However, Hill Farrer's request

in the alternative for a judgment enforcing the confirmation order of the California court is

GRANTED.

## I.     BACKGROUND

### A. The Parties

IBD is a California corporation engaged in the development, manufacture, and sale of antimicrobial products, including skincare and cleansing products.  Pl.'s Statement of Material Facts Supp. Mot. Summ. J. ¶ 1, Doc. 175 (hereinafter "Pl.'s 56.1").  VSP Technologies ("VSP") is a New York corporation that licenses and markets various technologies but does not itself manufacture or sell any product.  *Id.* ¶ 2.  San-Mar manufactures cosmetic products and is based in Elmsford, New York.  *Id.* ¶ 3.  Carlo Micceri served, at the relevant time, as VSP's President, and was also involved in various capacities with San-Mar.  *Id.* ¶¶ 4, 24.

William A. Meyers ("Meyers") and Neil D. Martin ("Martin") are partners at Hill Farrer, the California-based law firm retained by IBD from the commencement of their action in May 2012 until September 14, 2015.  William A. Meyers Decl. ¶¶ 1–6, Doc. 315 (hereinafter "Meyers Decl.").  Meyers has practiced law since 2009, and Martin has practiced law since 1980.  *Id.* ¶ 6. Both Meyers and Martin were primarily responsible for representing IBD in the underlying matter, and they billed IBD at an hourly rate of $340 and $510, respectively.  *Id.*  IBD agreed to the hourly rate of both attorneys upon retaining the firm, and Hill Farrer maintains that those rates were "less than the rates charged by comparable attorneys with the same experience . . . at comparable firms for work of this nature."  *Id.*

### B. The Underlying Litigation & Fee Dispute

On May 9, 2012, IBD filed a complaint against VSP, San-Mar,[1] and Micceri to resolve issues relating primarily to three patent sublicensing agreements.  The complaint included eight causes of action against the various defendants for breach of contract, Compl. ¶¶ 28–44; tortious

---

[1] IBD voluntarily dismissed San-Mar from the initial action on May 22, 2014.  Docs. 96, 98.

interference with prospective economic advantage, *id.* ¶¶ 45–54; tortious interference with contract, *id.* ¶¶ 55–65; fraudulent misrepresentation, *id.* ¶¶ 66–70; negligent misrepresentation, *id.* ¶¶ 71–74; two counts of fraudulent inducement, *id.* ¶¶ 75–84; and breach of an implied covenant of good faith and fair dealing, *id.* ¶¶ 85–92.

On December 20, 2012, VSP and Micceri responded by asserting ten counterclaims against IBD for breach of contract, Defs.' Amended Answer, ¶¶ 97–101, Doc. 36; unjust enrichment, *id.* ¶¶ 102–106; unfair competition and false advertising, *id.* ¶¶ 107–17; dilution of trademark, *id.* ¶¶ 118–22; unfair business practices, *id.* ¶¶ 123–26; unfair competition, *id.* ¶¶ 127–34; false and fraudulent registration of a patent, *id.* ¶¶ 135–38; conspiracy to defraud, *id.* ¶¶ 139–43; breach of a confidentiality clause, *id.* ¶¶ 146–50; and reasonable attorneys' fees, costs, and disbursement, *id.* ¶¶ 151–52.

As the litigation proceeded, IBD missed several payments despite Hill Farrer's continued practice of providing them with monthly invoices detailing the services provided, time spent, and corresponding charges.  Hill Farrer's Third-Party Mot. 2, Doc. 314 (hereinafter "HF's Mot."). By August 5, 2015, IBD owed Hill Farrer $271,942.63.  *Id.*  As a result of IBD's failure to make payments, Hill Farrer requested that IBD replace them as attorneys of record with new counsel. *Id.*  IBD agreed but requested that Hill Farrer remain counsel of record through the completion of ongoing cross-motions for summary judgment, which had begun in March 2015.  Meyer Decl., Ex. C at 2 (hereinafter the "Arbitral Award").[2]  In September 2015, this Court granted Hill Farrer's request for substitution.  Consent Order Granting Substitution of Attorney, Doc. 205.

---

[2] IBD's motion was eventually granted in part and denied in part, while the defendants' cross-motion was denied in its entirety.  *Innovative Biodefense, Inc. v. VSP Tech., Inc.*, 176 F. Supp. 3d 305 (S.D.N.Y. 2016).

Pursuant to California practice, the parties engaged in arbitration to resolve the fee dispute.  On October 21, 2016, IBD petitioned for arbitration, and on February 20, 2018, the panel issued an award ordering IBD to pay Hill Farrer $271,943, plus interest.  Meyers Decl. ¶ 8. Hill Farrer then moved to confirm the award in the Superior Court of the State of California, County of Los Angeles, which, on June 28, 2018, entered a judgment against IBD for $356,635.94, plus post-judgment interest.  *Id.* ¶ 10.[3]

On July 3, 2018, IBD notified the Court that it had settled with VSP, Doc. 302, and on July 6, the parties stipulated to the dismissal of all claims and counterclaims, Doc. 308.  Hill Farrer then filed this motion, seeking a charging lien on that settlement as well as a judgment in quantum meruit.  The contents of the settlement agreement are confidential, but a copy has been provided to the Court for *in camera* review.[4]

## II.   LEGAL STANDARDS

### A. Charging Lien

New York Judiciary Law § 475 allows attorneys to obtain a charging lien, enforceable against the recovery of former clients, as a means of securing compensation for services that produced that recovery.  In relevant part, the statute provides:

> [f]rom the commencement of an action, special or other proceeding in any court or before any state, municipal, or federal department, . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come . . . .   The court upon petition of the client or attorney may determine and enforce the lien.

---

[3] The parties had stipulated before the Superior Court as to the proper amount of the judgment.  Meyers Decl. ¶ 9.

[4] Although IBD claims to have provided Hill Farrer with a copy of the agreement for the purposes of this motion, Pl.'s Mem. Opp'n Mot. 2, Doc. 316, Hill Farrer represented in its papers that, at the time of execution, they had not been provided with a copy of the agreement, Meyers Decl. ¶ 12–13.

4

N.Y. Jud. Law § 475.  Courts have consistently held that charging liens under § 475 are "enforceable in federal courts in accordance with its interpretation by New York Courts." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998).  Charging liens are available only for the benefit of the "attorney of record," *id.* at 450, meaning an attorney that either "participat[ed] in a legal proceeding on client's behalf" or "had [their] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter," *Pettiford v. City of Yonkers*, No. 14 Civ. 6271 (JCM), 2020 WL 1331918, at *3 (S.D.N.Y. Mar. 20, 2020) (citing *Hampshire Grp. Ltd. v. Scott James Co., LLC*, No. 14 Civ. 2637 (JGK) (MHD), 2015 WL 5306232, at *5 (S.D.N.Y. July 27, 2015)).

Charging liens attach not at the time of recovery, but upon commencement of the action, *id.* (citing *Ross v. Mitsui Fudosan, Inc.*, No. 97 Civ. 0975 (PKL), 1998 WL 556171, at *2 (S.D.N.Y. Sept. 1, 1998)), effectively providing the attorney with an equitable security interest in any favorable result of litigation, *id.* (citing *Antonmarchi v. Consol. Edison Co. of New York*, 678 F. Supp. 2d 235, 240 (S.D.N.Y. 2010)).  Even where the attorney of record withdraws from the matter, they are entitled to enforce their charging lien so long as they had "good cause" for withdrawing.  *Id.* (quoting *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010)); *see also Itar-Tass Russian News Agency*, 140 F.3d at 451 ("Participation in the proceeding at one point as counsel of record is a sufficient predicate for invoking the statute's protection."); *Perez v. Progenics Pharm., Inc.*, 204 F. Supp. 3d 528, 553 (S.D.N.Y. 2016) ("An attorney's permitted withdrawal from representation of a party does not affect his entitlement to the statutory lien under Section 475." (internal quotation marks omitted)).  In such instances, the charging lien is fixed at "the fair and reasonable value of the services rendered, determined at the time of the [withdrawal] and computed on the basis of *quantum meruit*." *Pettiford*, 2020 WL 1331918, at *3

(quoting *Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12 Civ. 7424 (JMF), 2013 WL 371673, at \*2 (S.D.N.Y. Jan. 29, 2013)); *accord Prout v. Anne C. Vladeck & Vladeck, Raskin & Clark, P.C.*, 338 F. Supp. 3d 358, 360 (S.D.N.Y. 2018); *Melnick v. Press*, No. 6 Civ. 6686 (JFB) (ARL), 2009 WL 2824586, at \*4 (E.D.N.Y. Aug. 28, 2009) (collecting cases).

### B. Quantum Meruit

"[F]ederal courts may exercise supplemental jurisdiction over fee disputes," including claims for judgment in *quantum meruit*, "between litigants and their attorneys when the dispute relates to the main action." *Achtman v. Kirby, McInerny & Squire, LLP*, 150 F. App'x 12, 15 (2d Cir. 2005); *see also Bretillot v. Burrow*, No. 14 Civ. 7633 (JGK) (MHD), 2015 WL 5306224, at \*12 (S.D.N.Y. June 30, 2015) (report and recommendation) (collecting cases), *adopted* 2015 WL 6455155 (S.D.N.Y. Oct. 24, 2015). The party seeking recovery on a *quantum meruit* basis must articulate the following: "(1) the performance of services in good faith, (2) the acceptance [thereof] by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Liddle & Robinson, LLP v. Garrett*, 720 F. Supp. 2d 417, 422 (S.D.N.Y. 2010) (collecting cases); *accord Pettiford*, 2020 WL 1331918, at \*4 (citing *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994)).

Whether *quantum meruit* is invoked for the purpose of fixing a charging lien or as an independent basis for recovery of unpaid attorney's fees, the reasonable value of the services provided is not fixed by strictures of the fee agreement between the attorney and their former client, *see, e.g.*, *Kovach v. City Univ. of New York*, No. 13 Civ. 7198 (LGS), 2015 WL 5827414, at \*2 (S.D.N.Y. Oct. 6, 2015), nor by the result reached in the underlying suit, *Pettiford*, 2020 WL 1331918, at \*3. Rather, New York courts have considered a host of factors in ascertaining the reasonable value of legal services, including the difficulty of the matter, the nature and extent

6

of the services, the time reasonably expended thereon, the quality of counsel's performance and their qualifications, the amount at issue, and, to a limited extent, the results obtained. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998); *Casper v. Lew Lieberbaum & Co., Inc.*, 182 F. Supp. 2d 342, 346 (S.D.N.Y. 2002); *Pettiford*, 2020 WL 1331918, at *4. As a means of assessing those various factors, courts have often set the reasonable value of legal services based on the "lodestar" approach of applying a reasonable hourly rate to a reasonable number of hours worked, thereby arriving at a presumptively reasonable fee, subject to further modification by the court. *Sequa Corp.*, 156 F.3d at 148–49; *Pettiford*, 2020 WL 1331918, at *5 (describing the application of the lodestar method).

## III.    DISCUSSION

### A. Charging Lien

There is no dispute that Hill Farrer, and more specifically Meyers and Martin, were IBD's counsel of record at the time the complaint was filed, that they engaged in substantial work while representing IBD until their withdrawal, and that their withdrawal was for cause. HF's Mot. 1–3; Meyers Decl. ¶¶ 1–7. Based on that work, Hill Farrer would have this court enforce a charging lien against the settlement reached between IBD and the defendants after Hill Farrer had withdrawn. Because that settlement did not create any affirmative recovery on the part of IBD as required under § 475, Hill Farrer's request is denied.

A settlement can undoubtedly be the subject of a charging lien. N.Y. Jud. Law § 475 ("[T]he attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a . . . settlement . . . in his or her client's favor . . . ."). The requirement remains, however, that there be some proceeds, created by the attorney's efforts and recovered by the client, to which the lien may attach. *See Fontana v. Republic of Argentina*, 03

7

Civ. 8531 (LAP), 2019 WL 8112479, at *2 (S.D.N.Y. Feb. 28, 2019) (citing *Oppenheim v. Pemberton*, 164 A.D.2d 430, 433 (3d Dept. 1990)); *Galven v. Aspen Corp.*, 967 F. Supp. 2d 615, 627 (E.D.N.Y. 2013) (citing *Banque Indosuez v. Sopwith Holdings Corp.*, 98 N.Y.2d 34, 44 (2002)).

The settlement here did not produce an affirmative recovery for IBD.  The specifics of that settlement are confidential, but an *in camera* review of the agreement makes clear that no proceeds were created thereby.  To the extent that the settlement had some value as a result of foregone liability or the retention of money or property, prior decisions make clear that more is required for a charging lien to attach.  *See Rosewood Apartments Corp. v. Perpignano*, No. 99 Civ. 4226 (NRB), 2005 WL 1084396, at *3 (S.D.N.Y. May 5, 2005) (explaining that a judgment protecting or retaining a client's property or interest, absent some affirmative recovery, does not warrant a charging lien (citing *Rosenman & Colin v. Richard*, 850 F.2d 57, 61 (2d Cir. 1988))); *Banque Indosuez*, 98 N.Y.2d at 44 ("[T]he litigation or settlement must result in more than the mere entry of a judgment on behalf of a client; there must be proceeds from the litigation upon which the lien can affix.").  Because the settlement "contemplated no money changing hands," Hill Farrer is not entitled to a charging lien thereupon.  *Hampshire Grp. Ltd.*, 2015 WL 5306232, at *6.

### B. Quantum Meruit

"[T]he absence of a charging lien or a retaining lien is not dispositive of an outgoing attorney's claim to recovery of the reasonable value of legal services rendered and the attorney may still seek a recovery sounding in quantum meruit."  *Bretillot*, 2015 WL 5306224, at *12 (collecting cases).  Hill Farrer could, therefore, still obtain a judgment in *quantum meruit* for the services they rendered IBD.  Whether this Court exercises supplemental jurisdiction over those

principally state law claims, however, is a decision submitted to the Court's sound discretion. *E.g.*, *Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012); *Achtman*, 150 F. App'x at 15; *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988).  The Court declines to do so here.

Hill Farrer is correct in its assertion that this Court is well-acquainted with the underlying litigation and the firm's legal services therein.  HF's Mot. 6.  What they fail to address, however, is the effect of the outstanding judgment of a California court confirming their arbitral award for the precise amount sought here, post-judgment interest and all, on this Court's assessment of whether supplemental jurisdiction is appropriate.  Indeed, the familiarity rationale relied on by Hill Farrer is only one of "several non-exhaustive factors [that] can weigh in favor of exercising ancillary jurisdiction" over a fee dispute, *Levitt,* 669 F.3d at 104, and one that does not take account of the California court's judgment.  That this Court is well acquainted with the underlying litigation is, therefore, not a sufficient justification in its own right.

Hill Farrer overlooks the issue of "judicial economy" as it relates to the outstanding judgment, *id.*, in part because they, in effect, request that this Court's *quantum meruit* judgment simply mirror the recovery provided by the arbitral award, HF's Mot. 6 (requesting a judgment in *quantum meruit* of $356,635.94, plus post-judgment interest).  That request miscalculates the effort required to conduct a *quantum meruit* analysis.  As noted above, the reasonable value of an attorney's services is not primarily a function of the rate set by the retainer agreement.  *Kovach*, 2015 WL 5827414, at *2.  Rather, that determination would require this Court to assess a number of factors relevant to Hill Farrer's services and engage in a robust "lodestar" evaluation.  *Sequa Corp.*, 156 F.3d at 148–49; *see Bretillot*, 2015 WL 5306224, at *13–20 (demonstrating the multi-faceted process of the *quantum meruit* analysis).  Moreover, the record before the Court does not

9

permit any such analysis without making certain assumptions with respect to a number of factual questions.  In the face of an outstanding judgment from a California court, then, there is simply no basis to exercise supplemental jurisdiction over Hill Farrer's *quantum meruit* claims, and it is fully within this Court's discretion to decline to do so here.  *Id.* at *21–22 (declining supplemental jurisdiction over ancillary *quantum meruit* claims).

Hill Farrer is not without recourse, however, as they request that this Court enter, in the absence of a judgment in *quantum meruit*, a judgment enforcing the California court's confirmation of the arbitral award.  IBD has made no argument as to why this Court should not enter such a judgment, and this Court finds it is appropriate to do so here.

## IV.    CONCLUSION

For the reasons set forth above, Hill Farrer's motions to enforce a charging lien and for judgment in *quantum meruit* are DENIED.  Hill Farrer's request in the alternative to enforce the judgment of the Superior Court of the State of California, County of Los Angeles, entered on June 28, 2018, is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 314.

It is SO ORDERED.

Dated:    May 11, 2020
          New York, New York

_____
Edgardo Ramos, U.S.D.J.

10